## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

DARR ANGELL, Individually,
and STATE OF NEW MEXICO
*ex rel.* DARR ANGELL,

       Plaintiffs,

vs.                                         No. 03-CV-318 JCH/RLP

SHELL OIL COMPANY and POLARIS
PRODUCTION CORPORATION,

       Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendant Polaris Production Corporation's ("Polaris") Motion to Strike Exhibits Attached to Plaintiff's Response in Opposition to Polaris's Motion for Summary Judgment, filed January 26, 2006 **[Doc. No. 73]**, and Defendant Polaris's Motion for Summary Judgment and Consolidated Memorandum of Law, filed December 22, 2005 **[Doc. No. 69]**. The Court having considered the motions, briefs, and relevant law, and being otherwise fully informed, finds that the Motion to Strike will be granted and that the Motion for Summary Judgment will be granted in part.

### BACKGROUND

Plaintiff Angell filed a Complaint against Defendant Polaris on August 12, 2002, for damages to property located at the north half of Section 1, Township 15 South, Range 37 East, Lea County, New Mexico ("Priest Property") and the east half of Section 10, Township 15 South, Range 37 East, Lea County, New Mexico ("Pacific Property").

Between 1947 and 1973 co-defendant Shell Oil Company ("Shell") was a lessee under

certain oil and gas leases for the exploration of oil, gas, and other minerals underlying the Priest Property and Pacific Property.  In 1973, Shell sold all of its interest in the Priest and Pacific Properties to Centaur Petroleum and Defendant Polaris.  Defendant has had various oil and gas leases covering the Pacific and Priest Properties.  Defendant Polaris has conducts its oil and gas operations on the Priest and Pacific Properties for the purpose of exploring and drilling for and producing and marketing oil and gas, and generally developing the Priest and Pacific Properties for the extraction and marketing of oil and gas therefrom.  The oil and gas leases grant Defendant Polaris all rights and privileges necessary, incident to, or convenient for the economical operation of the Pacific and Priest Properties for oil and gas purposes.  By virtue of the oil and gas leases, Defendant Polaris is entitled, and has the right, to use as much of the surface of the Pacific and Priest Properties as is reasonably necessary for its oil and gas operations.

Defendant Polaris maintains that it has developed the Pacific and Priest Properties in accordance with customary and prevailing industry practices, that it has not used more of the surface of the Priest and Pacific Properties than is reasonably necessary for the purposes of exploring for, extracting, producing, and marketing oil and gas, that its oil and gas operations on the Properties are and have been reasonable and necessary in order to explore for, extract, produce and market oil and gas, and that the manner in which it has used the surface of the Properties has been reasonable and necessary in order to explore for, extract, produce, and market oil and gas.

Plaintiffs dispute these alleged facts.  Plaintiffs cite the State of New Mexico Energy, Minerals and Natural Resources Department, Oil Conservation Division's ("NMOCD") Order Number R-10879 in Case Number 11812.  In the Order, the NMOCD finds that Defendant Polaris operated certain wells in the Denton Field, including some on the leases at issue herein,

and that if Defendant Polaris did not take action to plug and abandon the wells on the property, the then current conditions of the wells (1) would probably result in waste, (2) would violate rights, (3) may contaminate livestock and wildlife, and (4) could contaminate fresh waters.  The NMOCD Order further required Defendant Polaris to remove all equipment from the Pacific Property and to begin a clean up of its leases in the Denton Field.  Specifically, the NMOCD required Defendant Polaris to "cause the Priest Well No. 4 . . . to be restored to productive status and repair the gas leak at the wellhead."  The NMOCD required Defendant Polaris to "spend at least $2,000.00 per month to clean up its leases within the Denton field for a period of six months, at which time [the Order required Defendant Polaris to] seek a review and assessment from the [NMOCD]."  The NMOCD ordered Defendant Polaris to clean up the Pacific Royalty lease according to NMOCD guidelines and directed that environmental concerns should be paramount in the clean up.  The NMOCD also warned Defendant Polaris properly to use and maintain its production facilities.  Finally, the NMOCD ordered Defendant Polaris to sample groundwater from all nearly fresh water wells and have the water analyzed for hydrocarbon contamination.[1]

Defendant Polaris sold all of its interests in the Priest Property to United Operating, LLC effective September 1, 2003.

Plaintiffs' deadline to disclose expert witnesses was August 9, 2005.  Plaintiffs have not identified any expert qualified to render an opinion that Defendant Polaris's use of the Priest or Pacific Properties was negligent, unreasonable, or excessive based upon prevailing industry

---

[1] Plaintiffs also attach six additional exhibits to their response to the Motion for Summary Judgment.  Plaintiffs, however, do not attach these exhibits to an affidavit that identifies and authenticates the documents.  Defendant Polaris brings the Motion to Strike Exhibits two through seven.  Because the Court grants the Motion to Strike, the Court does not consider the facts contained in the exhibits.

standards.  Defendant Polaris maintains that Plaintiffs have not provided Defendant with any expert report that suggests that the groundwater and/or acquifer beneath the Priest or Pacific Property has been contaminated, much less that the groundwater and/or acquifer was contaminated by the alleged acts and/or omissions of Defendant Polaris.  Plaintiffs dispute this fact, contending that in October 2002, Plaintiffs provided prior counsel to Defendant Polaris with a copy of a Preliminary Site Investigation, dated May 2002, prepared by Jerry Nichol of the Environmental Technology Group, Inc.  These tests included taking soil samples and drilling two monitor wells to sample the groundwater.  The tests revealed the presence of hydrocarbons on the wells drilled adjacent to the Priest battery.[2]

Plaintiffs do not know the present value of the Pacific and Priest Properties.  Plaintiffs do not know the cost to "clean up" the alleged surface damage to the Priest and Pacific Properties. Plaintiffs do not know the cost to "clean up" the alleged groundwater and/or acquifer contamination.

Plaintiff State of New Mexico *ex rel*. Darr Angell did not bring this action for abatement by a verified complaint in the district court of the county where the alleged public nuisance exists.

## STANDARD

Summary judgment generally is appropriate when a court determines that "'there is no genuine dispute over a material fact and the moving party is entitled to judgment as a matter of law.'"  *Thrasher v. B & B Chem. Co.*, 2 F.3d 995, 996 (10th Cir. 1993) (citation omitted).  Under Rule 56(c), "the mere existence of *some* alleged factual dispute between the parties will not defeat

---

[2] Plaintiffs attach the report as exhibit seven to their response to the Motion for Summary Judgment.  Because the Court strikes exhibit seven based upon Plaintiffs' failure to attach the report to an affidavit, the Court does not consider the contents of the affidavit.  *See supra* note 1.

an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  Rather, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* at 248.

To carry its initial burden, the moving party need not negate the nonmoving party's claim. *See Allen v. Muskogee*, 119 F.3d 837, 840 (10th Cir. 1997).  "'Instead, the movant only bears the initial burden of 'showing'--that is, pointing out to the district court--that there is an absence of evidence to support the nonmoving party's case.'" *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).  Once the moving party meets its burden, the nonmoving party must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)).  A plaintiff cannot rely upon conclusory allegations or contentions of counsel to defeat summary judgment but rather must produce some specific factual support of its claim.  *See Pueblo v. Neighborhood Health Centers, Inc.*, 847 F.2d 642, 649 (10th Cir. 1988); *Fritzsche v. Albuquerque Municipal Sch. Dist.*, 194 F. Supp. 2d 1194, 1206 (D.N.M. 2002).  "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted). Upon a motion for summary judgment, a court "must view the facts in the light most favorable to the nonmovant and allow the nonmovant the benefit of all reasonable inferences to be drawn from the evidence." *Kaus v. Standard Ins. Co.*, 985 F. Supp 1277, 1281 (D. Kan. 1997), *aff'd*, 162 F.3d 1173 (10th Cir. 1998).  If there is no genuine issue of material fact in dispute, then a court must next determine whether the movant is entitled to judgment in its favor as a matter of law.

5

*See, e.g.*, *Jenkins v. Wood*, 81 F.3d 988, 990 (10th Cir. 1996); *Celotex*, 477 U.S. at 322.

## DISCUSSION

On December 22, 2005, Defendant Polaris filed its Motion for Summary Judgment.  In that Motion, Defendant Polaris seeks summary judgment on the ground that Plaintiff Angell cannot demonstrate as a matter of law that Defendant Polaris's operations were negligent, unreasonable, or excessive.  Defendant Polaris also seeks summary judgment on Plaintiff Angell's negligence and damages claims on the ground that Plaintiff has no evidence to support his damages claim.  Finally, Defendant Polaris seeks summary judgment on Plaintiff State of New Mexico *ex rel*. Darr Angell's claim for public nuisance under New Mexico Statute Section 30-8-8 on the ground that Plaintiff failed to bring a verified complaint and failed to bring the action in the country where the public nuisance allegedly exists.

On January 26, 2006, Defendant Polaris filed a Motion to Strike certain exhibits attached to Plaintiff Angell's response in opposition to the Motion for Summary Judgment.  Because the determination of the Motion to Strike affects the evidence considered in opposition to the Motion for Summary Judgment, the Court considers the Motion to Strike as a threshold matter.

I.      Motion to Strike.

Plaintiffs attach seven exhibits to their response to the Motion for Summary Judgment. Defendant Polaris moves to strike exhibits two through seven on the ground that Plaintiffs failed to attach the exhibits to affidavits identifying and authenticating the documents.  Under Federal Rule of Civil Procedure 56(c), once the moving party establishes its initial burden of demonstrating an absence of evidence to support the plaintiff's case, the plaintiff must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"

6

*Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)).  Under Rule 56, a party may not simply attach documents, but rather must attach them to a Rule 56(e) affidavit that, upon personal knowledge, both identifies and authenticates each document.  *See, e.g.*, *Scott v. Edinburg*, 346 F.3d 752, 759-60 & n.7 (7th Cir. 2003) (expert report introduced into record without any support affidavit verifying its authenticity was inadmissable and could not be considered for purposes of summary judgment); *Stuart v. General Motors Corp.*, 217 F.3d 621, 635 n. 20 (8th Cir. 2000) ("[t]o be considered on summary judgment, documents must be authenticated by and attached to affidavit made on personal knowledge setting forth facts as would be admissible into evidence"; "[d]ocuments which do not meet those requirements cannot be considered"); *Orsi v. Kirkwood*, 999 F.2d 86, 92 (4th Cir. 1993) ("To be admissible at the summary judgment stage, 'documents must be authenticated by and attached to an affidavit that meets the requirements of Rule 56(e)'") (quoting 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure § 2722 at 382); *Carmona v. Toledo*, 215 F.3d 124, 131 (1st Cir. 2000) (failure to authenticate by affidavit precludes consideration of documents supporting motion for summary judgment).  Although, absent an objection, a district court may review unauthenticated documents not attached to a Rule 56(e) affidavit, *see Tucker v. Rose*, 955 F. Supp. 810, 814 (N.D. Ohio 1997) (evidence not meeting standard of affidavits based on personal knowledge may be considered unless opposing party affirmatively raises issue of defect; opposing party's failure to object constitutes waiver), Defendant Polaris has objected to exhibits two through seven. Although Plaintiff Angell was aware of this objection, Plaintiff failed to amend his response to the Motion for Summary Judgment or otherwise submit Rule 56(e) affidavits to authenticate the exhibits in response to the Motion to Strike.  Plaintiff, however, failed to submit the necessary affidavits, and the Court therefore is precluded from considering exhibits two through seven.

Accordingly, the Court grants Defendant Polaris's Motion to Strike.

II.     Motion for Summary Judgment.

        A.      Reasonableness of Defendant Polaris's Operations.

        Defendant Polaris argues that the Court should grant summary judgment in its favor because there is no evidence that Plaintiff Angell's alleged injury was the result of excessive, unreasonable, or negligent use of the surface by Defendant Polaris.  In *Amoco Production Co. v. Carter Farms*, the New Mexico Supreme Court set forth the elements of a property damage claim stemming from exploration, drilling, and production operations conducted by an owner or lessee of a mineral estate.  103 N.M. 117, 703 P.2d 894 (N.M. 1985).  The *Carter Farms* court held that a viable claim for damages must be predicated on a showing that the owner or lessee of the mineral estate used more of the surface estate than was reasonably necessary for its oil and gas operations.  *Id.* at 119, 703 P.2d at 896.  The court explained that when a grantor agrees to execute an oil and gas lease, the grantor conveys to the grantee a right to explore for and extract minerals.  *Id.*  Once such a lease is executed, the mineral and surface estates are severed, and the mineral estate becomes the dominant estate such that its owner or lessee is "entitled to use as much of the surface area as is reasonably necessary for its drilling and production operations.  *Id.* (citations omitted).[3]  The court noted, however, that the lessee's rights "must be exercised with due regard for the rights of the surface owner."  *Id.* (citations omitted).

        Defendant Polaris maintains that there is no evidence to support Plaintiff Angell's claim that Defendant Polaris unreasonably, excessively, or negligently used the surface of the property.

---

        [3] Defendant Polaris argues that there is no implied duty to restore the surface estate to its original condition.  Plaintiff maintains, however, only that the damage to the surface estate by the owner of the mineral estate was unreasonable, excessive, or negligent, which is consistent with the rule that there is no implied duty to restore the surface estate to its original condition.

Defendant points out that Plaintiff has failed to present any expert testimony unreasonable use of the surface estate.  Defendant, however, cites no authority specifically indicating that a plaintiff must present expert testimony to establish unreasonable use of a surface estate.  Although Defendant Polaris does cite *Toppino v. Herhahn*, 100 N.M. 564, 673 P.3d 1297 (N.M. 1983), for the proposition that a medical expert is required, in that case the court actually held that an expert was not necessary to establish medical negligence because the type of negligence alleged was "within the realm of the common knowledge of the average person." *Id.* at 567-68, 673 P.3d at 1300-01.  Moreover, Defendant Polaris does not cite, and this Court did not find, any case indicating that the line of medical malpractice cases requiring an expert to identify usual and customary professional standards of care applies without exception to property damage cases predicated upon unreasonable use of the surface estate.

Defendant's citation to *Taygeta Corporation v. Varian Associates*, 763 N.E.2d 1053, 1062 (Mass. 2002), likewise is unpersuasive.  *Taygeta* does not stand for the proposition that an expert is required to establish unreasonable use of a surface estate but rather that a plaintiff is not on notice of contamination in groundwater at the time the original contamination occurs.  The *Taygeta* court explained that "by its nature, subsurface groundwater contamination is inherently unknowable in the absence of environmental testing" and that "consultants must drill monitoring wells, collect samples, and analyze the data" "[t]o establish its presence." *Id.*  Moreover, the *Taygeta* case also is distinguishable because it arises only in the context of groundwater contamination.  A plaintiff alleging unreasonable use of the surface estate, as opposed to contamination of the surface estate, need not necessarily demonstrate contaminants in the groundwater to prove the case.

Finally, Defendant Polaris's citation to *Roark v. Allen*, 633 S.W.2d 804, 809 (Tex. 1982),

in which the court held that "expert testimony is necessary when the negligence is of such a nature as not to be within the experience of a layman," does not persuade the Court that Plaintiff Angell must establish unreasonable use of the surface estate through expert testimony.  Plaintiff Angell has presented evidence, for example, from which a reasonable jury could conclude that Defendant Polaris poorly maintained its equipment.  This type of alleged breach of duty is not necessarily outside of the experience of a layman.  *Compare Toppino*, 100 N.M. at 567-68, 673 P.3d at 1300-01 (no medical expert where "jury would not have had to make medical determinations regarding the surgical procedures and techniques employed"; "it is within the realm of the common knowledge of the average person that a breast implant should balance its healthy counterpart in size and location"); *Eis v. Chesnut*, 96 N.M. 45, 627 P.2d 1244 (N.M. Ct. App.1981) (holding that plaintiff presented sufficient facts in a medial malpractice case to raise an inference of negligence and withstand summary judgment without an expert witness where plaintiff presented evidence (*i.e.*, x-rays taken after operation, evidence of intense knee pain after operation, and evidence of continuing pain until pin implanted during operation was removed) from which average person could reasonably infer from common knowledge that defendant doctor should have known protruding pin was cause of plaintiff's pain).  Although, admittedly, other types of negligence may require expert testimony, the Court rejects Defendant Polaris's argument that Plaintiff must prove all types of unreasonable use of the surface estate through expert testimony.[4]

---

[4] In its reply in support of its Motion, Defendant Polaris for the first time argues that Plaintiff Angell must present expert testimony to establish that Defendant Polaris proximately caused damage to the surface estate.  The Court expresses no opinion whether expert testimony may be necessary to establish causation, because Defendant Polaris failed to raise the issue of causation in its opening brief.  The issue of causation, therefore, is not before this Court.

Although the Court holds that Plaintiff need not come forward with expert testimony to satisfy his summary judgment burden, Plaintiff nonetheless must come forward with specific facts demonstrating that there is a genuine issue for trial on the question of reasonableness. *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). To satisfy its burden, Plaintiff Angell attaches an order issued by the State of New Mexico Energy, Minerals and Natural Resources Department, Oil Conservation Division's, in which NMOCD found that if Defendant Polaris did not take action to plug and abandon certain wells, the then current conditions of the wells would probably result in waste, would violate rights, might contaminate livestock and wildlife, and could contaminate fresh waters. The NMOCD also required Defendant Polaris to remove all equipment from the Pacific Property and to begin a clean up certain property. Specifically, the NMOCD required Defendant Polaris to "cause the Priest Well No. 4 . . . to be restored to productive status and repair the gas leak at the wellhead," ordered Defendant Polaris to "spend at least $2,000.00 per month to clean up its leases within the Denton field for a period of six months," and required Defendant Polaris to clean up the Pacific Royalty lease according to NMOCD guidelines. The NMOCD further warned Defendant Polaris to properly use and maintain its production facilities. The Court concludes that this evidence is sufficient to raise a genuine issue of material fact regarding the question whether Defendant Polaris used the surface area of the estate reasonably. Accordingly, the Court denies Defendant Polaris's Motion for Summary Judgment on this ground.

B.      Damages.

Defendant Polaris seeks summary judgment on Plaintiff Angell's claim for damages.  If the Court dismisses the damages claim, Plaintiff Angell's negligence claim is likewise subject to dismissal as a matter of law because damages are an essential element of a negligence claim.

"The measure of damages under a negligence theory of liability for permanent damage to real property is the difference between the fair market value of the land prior to the injury and the fair market value of the land after the full extent of the injury has been determined."  *Carter Farms*, 103 N.M. at 120-21, 703 P.2d at 897-98 (citing *Ellis Drilling Corp. v. McGuire*, 321 S.W.2d 911 (Tex. Ct. App. 1959)).  "When the actions of the owner of the mineral estate have rendered the surface totally unusable for a period of time, then the damages are determined by the land's rental value for that same period."  *Id.*  "Where temporary damages results to the surface estate, but it can be repaired, then the damages are the cost of repair or restoration if the cost of restoration does not exceed the value of the property."  *Id.* (citing *Ellison v. Walker*, 281 P.2d 931 (Okla. 1955)).  Defendant Polaris maintains that Plaintiff does not know or have proof of (1) the cost to remediate the alleged surface damage, or (2) the present value of the Priest and Pacific Properties.  Because a jury verdict cannot be based upon speculation, guess, or conjecture, Defendant Polaris maintains that Plaintiff Angell's damages claim must fail as a matter of law.

When a moving party points out that there is an absence of evidence to support the nonmoving party's case, the nonmoving party must come forward with specific facts to demonstrate that there is a genuine issue for trial.  *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)).  Plaintiff Angell does not meet this burden.  Rather, in his response to the Motion for Summary Judgment, Plaintiff Angell makes no mention whatsoever of his damages claim.  Plaintiff Angell also fails to attach any documents containing admissible evidence that would

demonstrate damages.[5]  Because Plaintiff Angell has failed to meet his summary judgment burden, the Court grants Defendant Polaris's Motion for Summary Judgment seeking dismissal of the damages claim.  Furthermore, because damages are an essential element of a negligence claim, the Court likewise dismisses Plaintiff Angell's negligence claim.[6]

        C.      <u>Public Nuisance Pursuant to N.M. Stat. Ann. § 30-8-8.</u>

Defendant Polaris argues that it is entitled to summary judgment on Plaintiff State of New Mexico *ex rel.* Darr Angell's public nuisance claim pursuant to New Mexico Statutes Annotated Section 30-8-8 on the ground that Plaintiff failed to bring the claim by verified complaint and that he failed to bring the complaint in the district court of the county where the public nuisance exists.

New Mexico Statutes Annotated Section 30-8-8(B) provides, "A civil action to abate a public nuisance may be brought, by verified complaint in the name of the state without cost, by

---

[5] In response to a June 2, 2006, inquiry of this Court regarding whether Plaintiff Angell is pursuing his damages claim, Plaintiff Angell indicates, "Under the negligence theory Plaintiff seeks only those damages which are such as the costs of drilling the water wells and the loss of income from the inability to utilize the pasture where the Priest lease is located because of the contamination."  Letter from M. Newell, Pl's counsel, dated June 2, 2006.  Plaintiff Angell, however, has not pled these types of damages in his complaint.  Moreover, in his response to written discovery asking him to describe in detail every item of damages sought, Plaintiff Angell failed to describe these damages.  Plaintiff Angell responded that he solely sought remediation and made no claim for costs of water wells or lost income.  In addition, Plaintiff Angell objected to producing any information regarding his income on the ground that "such information is not reasonably calculated to lead to the discovery of admissible evidence."  Accordingly, the Court declines to consider these types of damages.  The Court also notes that in his response to the Motion for Summary Judgment on the damages claim, Plaintiff failed to provide any specific evidence of these damages.  Accordingly, Plaintiff Angell cannot satisfy his summary judgment burden by pleading them at this time, months after his response to the Motion was due.

[6] Because the Court dismisses the negligence and damages claims, and only equitable claims remain, this case no longer is a jury case.  Plaintiff Angell's counsel concedes as much.  In his letter addressed to the Court, Plaintiff Angell's counsel indicates that if the Court determines that "damages are not available then Plaintiff may not be able to present a negligence case."  Letter from M. Newell, dated June 2, 2006.  Plaintiff's counsel concludes that "this case may only have 'bench trial' issues remaining."  *Id.*

any public officer or private citizen, in the district court of the county where the public nuisance

exists, against any person, corporation or association of persons who shall create, perform or

maintain a public nuisance." Defendant Polaris points out that Plaintiff filed suit in Chaves

County, rather than Lea County where the alleged nuisance exists, and that Plaintiff failed to file a

verified complaint. Defendant Polaris does not maintain that it suffered any prejudice as a result

of Plaintiff's pleading errors. Plaintiff argues that by agreeing to remove the case to federal court,

Defendant Polaris waived its right to claim a venue objection, and that Plaintiff should be allowed

to correct the pleading error by submitting a verified complaint.[7]

The Court agrees that whether the case originally was brought in Chaves County or Lea

County is not of consequence now that the case has been removed to federal court. With respect

to Plaintiff's failure to file a verified complaint, the Court declines to grant the Motion for

Summary Judgment on this ground *provided that* Plaintiff files a verification for the public

nuisance claim brought in the First Amended Civil Complaint for Damages and Injunctive Relief

(in errata) within two (2) days from the date of this Memorandum Opinion and Order. If Plaintiff

fails to file a timely verification, the Court will reconsider its decision to deny the Motion for

Summary Judgment on the public nuisance claim.

---

[7] In reply, Defendant Polaris does not address Plaintiff's arguments of waiver and
amendment, but rather for the first time argues that the Court should grant summary judgment in
its favor on the public nuisance claim because Plaintiff cannot set forth evidence of groundwater
contamination sufficient to create a question of fact whether a public nuisance exists. Because
Defendant Polaris raises this specific argument for the first time in its reply, the Court declines
to consider the argument. Defendant Polaris also argues, for the first time in its reply, that Plaintiff
Angell's private nuisance claim should be dismissed because New Mexico does not recognize a
cause of action for private nuisance where recovery can be based upon standard theories of
negligence. The Court likewise declines to consider this argument because it is not properly
before the Court.

## CONCLUSION

For the reasons stated above, **IT THEREFORE IS ORDERED** that Defendant Polaris Production Corporation's Motion to Strike Exhibits Attached to Plaintiff's Response in Opposition to Polaris's Motion for Summary Judgment, filed January 26, 2006 **[Doc. No. 73]**, is hereby GRANTED.

**IT FURTHER IS ORDERED** that Defendant Polaris Production Corporation's Motion for Summary Judgment and Consolidated Memorandum of Law, filed December 22, 2005 **[Doc. No. 69]** is hereby GRANTED IN PART and DENIED IN PART as follows:

(1)     Defendant Polaris's Motion seeking summary judgment in its favor on Plaintiff Angell's damages claims is hereby GRANTED; Plaintiff Angell's negligence and damages claims are dismissed in their entirety; because only claims for equitable relief remain, this matter shall not be tried before a jury;

(2)     Defendant Polaris's Motion seeking summary judgment on Plaintiff Angell's claims on the ground that Plaintiff cannot demonstrate as a matter of law that Defendant Polaris's operations were negligent, unreasonable, or excessive is DENIED; and

(3)     Defendant Polaris's Motion seeking summary judgment on Plaintiff State of New Mexico *ex rel*. Darr Angell's claim for public nuisance under New Mexico Statute Section 30-8-8 is DENIED, provided that Plaintiff files a verification for the public nuisance claim brought in the First Amended Civil Complaint for Damages and Injunctive Relief (in errata) [Doc. No. 33] within two (2) days from the date of this Memorandum Opinion and Order; if Plaintiff fails to file a timely verification, the Court will reconsider its decision to deny the Motion for Summary Judgment on the public nuisance claim.

Dated this 5th day of June 2006.

JUDITH C. HERRERA
UNITED STATES DISTRICT JUDGE